UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                            :
UNITED STATES OF AMERICA,          :          Case No. 5:13-CR-3
                                            :          Case No. 5:15-CV-2374
                     Plaintiff,              :
                                            :
vs.                                          :          OPINION & ORDER
                                            :          [Resolving Doc. No. 46]
DELMAR H. BARCLAY                   :
                                            :
                     Defendant.             :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:


        Defendant Delmar Barclay brings this petition for a writ of habeas corpus under 28

U.S.C. § 2255.  He argues that he received ineffective assistance of counsel and that he was

improperly sentenced under the Armed Career Criminals Act.[1]  The Government opposes.[2]

        For the following reasons, the Court **DENIES** Barclay's petition.


                              **I. Background**

        On January 3, 2013, the United States indicted Defendant Delmar H. Barclay for being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[3]  Barclay pled guilty and

was sentenced under the Armed Career Criminals Act ("ACCA").   Under the ACCA, a

defendant faces a fifteen-year mandatory minimum sentence if he is convicted of being a felon in

---

        [1] Defendant filed his initial motion pro se.  Doc. 46.  Barclay submitted a supplemental motion
through counsel.  Doc. 50.
        [2] Doc. 53.  The Court granted Defendant's motion to file a pro se reply instantar.  Doc. 55; Doc.
56.
        [3] Doc. 1.

Case No. 5:13-CR-3
Gwin, J.

possession of a firearm and has three or more prior convictions for a violent felony or serious

drug offense.[4]   Barclay's pre-sentence report (PSR) identified six possible predicate offenses[5]:

1. Trafficking in Cocaine, Illegal Manufacture of Drugs, Possession of Cocaine, and Weapon Under Disability, in Summit County Common Pleas Court Case Number 05-05-1934(A), on or about February 22, 2010;

2. Trafficking in Cocaine, in Summit County Common Pleas Court Case Number 03-12-4012, on or about March 17, 2004;

3. Aggravated Assault, in Summit County Common Pleas Court Case Number 98-08-1967, on or about November 2, 1998;

4. Aggravated Trafficking, in Summit County Common Pleas Court Case Number 95-12-3301(A), on or about April 25, 1996;

5. Aggravated Burglary, in Summit County Common Pleas Court Case Number 86-05-0560(A), on or about August 1, 1986;

6. Aggravated Burglary, November 11, 1984.[6]

Neither the Pretrial officer who prepared the PSR, nor the Government offered

documents from these underlying state court convictions at the time of sentencing.  The Court

found Barclay qualified as an armed career criminal under the ACCA.  The Court did not

identify the specific predicate offenses, but rather relied on the "large number of crimes of

violence or drug trafficking offenses."[7]  Barclay's counsel did not object to the ACCA

---

.        [4] 18 U.S.C. § 924(e)(1).

[5] As Defendant points out in his supplemental petition, there is some ambiguity as to the exact predicate offenses that were the basis for the ACCA sentence.  Doc. 50 at 6.  This opinion considers all six charges identified in the Defendant's criminal history section of his presentence report.  Doc. 27 at ¶¶ 41-61.

[6] This sixth charge, a juvenile offense, was marked in the PSR criminal history section as an ACCA predicate offense.  Additional information as to the case number or underlying conviction were not available in the PSR.  As described below, Barclay has three predicate offenses before reaching this sixth charge.  As a result, this Court does not need to reach the question of whether it was improper to issue an ACCA sentence based on a prior conviction listed without detailed information or underlying documents.

[7] Doc. 42 at 3.

-2-

Case No. 5:13-CR-3
Gwin, J.

sentencing.  Counsel did not submit a sentencing memorandum.  Counsel did not object to any of the specifically listed predicate offenses in the PSR.

The Supreme Court's recent *Johnson v. United States*[8] opinion has thrown into question whether certain prior felonies can be counted as ACCA "violent felonies." The Supreme Court has held that *Johnson* applies retroactively to habeas claims challenging ACCA-enhanced sentences.[9]

Barclay brings this writ of habeas corpus, arguing that after *Johnson* he no longer has three violent felony predicate offenses and that some of his controlled substance predicate offenses were improperly scored as predicate offenses.   Barclay argues that his sentence under the ACCA was improper.[10]  Barclay also argues that he received constitutionally ineffective assistance of counsel because his trial counsel's failure to object to the ACCA sentence.[11]  The Government opposes.[12]

## II. Legal Standard

Title 28 United States Code Section 2255 gives a post-conviction means of collaterally attacking a federal conviction or sentence that violates federal law.  Section 2255 provides four grounds upon which a federal prisoner may challenge his conviction or sentence:

> 1) That the sentence was imposed in violation of the Constitution or laws of the United States;
> 2) That the court was without jurisdiction to impose such sentence;
> 3) That the sentence exceeded the maximum authorized by law; or
> 4) That the sentence is otherwise subject to collateral attack.[13]

---

[8]   U.S.    , 135 S.Ct. 2551 (2015).
[9] *Welch v. United States*,    U.S.    , 136 S.Ct. 1257 (2016).
[10] Doc. 46; Doc. 50.
[11] Doc. 46; Doc. 50.
[12] Doc. 53.
[13] 28 U.S.C. § 2255(a).

Case No. 5:13-CR-3
Gwin, J.

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."[14]

Barclay alleges two defects of constitutional magnitude: first, he says that after *Johnson* he no longer has three predicate convictions to support an ACCA sentence.  And second, he says that he received ineffective assistance of counsel.  The Court addresses the legal standards for these claims, and their merits, in turn.

### III. Analysis

Under the ACCA, a defendant faces a fifteen-year mandatory minimum sentence if he is convicted of being a felon in possession of a firearm and has three or more convictions for (1) a serious drug offense, or (2) a violent felony.[15]

Barclay has six convictions that his PSR identified as ACCA predicate offenses.  Three were serious drug offenses, the standard for which has not been altered by the Supreme Court's *Johnson* decision.  Three were violent felonies.  Of these six, if any three remain as ACCA predicate felonies, then Barclay's sentence under the ACCA was proper.

The Court concludes that two of Barclay's three previous drug convictions were improperly categorized as ACCA predicate offenses.  However, Barclay's prior conviction for aggravated burglary and conviction for aggravated assault remain predicate offenses, even in light of *Johnson*.  As a result, Barclay has at least three remaining ACCA predicate convictions: his 2005 trafficking conviction, his 1998 aggravated assault conviction, and his 1986 aggravated

---

[14] *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] 18 U.S.C. § 924(e)(1).

Case No. 5:13-CR-3
Gwin, J.

burglary conviction.  These convictions sufficiently support his 2013 Armed Career Criminals

Act sentence.

### A. ACCA Predicate Offenses: Serious Drug Convictions

For the purposes of the ACCA, a "serious drug offense" is a state or federal crime

involving a controlled substance "for which a maximum term of imprisonment of ten years or

more is prescribed by law."[16]  To qualify as a serious drug offense, Federal convictions must be

under the Controlled Substances Act.[17]  State convictions must involve "manufacturing,

distributing, or possessing with intent to manufacture or distribute, a controlled substance."[18]

#### 1. Trafficking in Cocaine, in Summit County Common Pleas Case Number 03-12-4012, on or about March 17, 2004

The PSR identifies Barclay's 2003 cocaine trafficking conviction as an ACCA predicate

offense.  In that case, Barclay was convicted of a fourth degree felony.[19]  Under Ohio law at the

time, a fourth degree felony was punishable by a maximum of eighteen months imprisonment.[20]

For a state drug charge to qualify as a predicate offense under the ACCA, the charge

must be punishable by ten or more years' imprisonment.  The 2003 trafficking conviction does

not meet this requirement.  Its classification as an ACCA predicate offense in the PSR was

facially incorrect.[21]

---

[16] 18 U.S.C. § 924(e)(2)(A).
[17] 18 U.S.C. § 924(e)(2)(A)(i) (citing 21 U.S.C. § 802 *et seq.*).
[18] 18 U.S.C. § 924(e)(2)(A)(ii).
[19] Doc. 27 at ¶ 60.  Barclay was also charged with two misdemeanors: obstructing official business and resisting arrest.  However, these charges could not be the basis for an ACCA predicate offense either.  The charges are clearly not felonies subject to the violent felony definition.  And they are facially unrelated to controlled substances.
[20] Ohio Rev. Code § 2929.14(A)(4) (effective date June 13, 2002).
[21] The Government does not dispute this conclusion in its briefing.

Case No. 5:13-CR-3
Gwin, J.

    2. Aggravated Trafficking, in Summit County Common Pleas Case Number 95-12-3301(A), on or about April 25, 1996;

The PSR identifies Barclay's 1995 aggravated trafficking conviction as an ACCA predicate offense.  Both Barclay's counsel and the Government agree that Barclay's 1995 conviction is a predicate offense.[22]  The parties are incorrect.

In the 1995 aggravated trafficking case, Barclay's indictment, his plea documents, and his sentencing documents all confirm that he was charged with a third degree felony under Ohio Revised Code § 2925.03(A)(2).  However, the penalty for a third degree felony violation of § 2925.03(A)(2) is only up to two years unless there is a prior crime of violence specification.  If a defendant is convicted with a prior crime of violence specification, then a defendant may be sentenced to an indefinite term ranging between two years and ten years under Ohio Revised Code § 2929.11(B)(6).[23]  On the other hand, if a defendant is convicted *without* the crime of violence specification, then he may be sentenced to a definite term of one year, one and one-half years, or two years under Ohio Revised Code § 2929.11(D)(1).[24]

Barclay was indicted for a third degree felony *with* a prior crime of violence specification.  If he had been convicted of this charge, the prior conviction would satisfy the ACCA's ten-year requirement.  However, the underlying records show that the state court dismissed Barclay's prior crime of violence specification at the time of Barclay's guilty plea.[25]

---

[22] Barclay continued to argue in his *pro se* filings that his 1995 conviction was not a predicate offense, though on other grounds than those discussed here.

[23] Ohio Rev. Code § 2941.143 (effective date July 1, 1983) ("Imposition of an indefinite term pursuant to division (B)(6) or (7) of section 2929.11 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies . . . . that the offender has previously been convicted of or pleaded guilty to an offense of violence. Such a specification shall be stated at the end of the body of the indictment, count, or information and shall be in substantially the following form."

[24] Ohio Rev. Code 2929.11(D)(1) (effective date November 20, 1990).

[25] Doc. 50-2 at 9.

Case No. 5:13-CR-3
Gwin, J.

As a result, Barclay was sentenced under Ohio Revised Code § 2929.11(D)(1), which has a maximum term of only two years.  His sentencing document confirm that he was sentenced to a "definite" period of one year.[26]

Barclay's 1995 conviction for aggravated trafficking without a crime of violence specification had a maximum sentence of two years.  It does not meet the ACCA's ten-year requirement.  It is not a predicate offense for ACCA sentencing purposes.

### 3. Trafficking in Cocaine, Illegal Manufacture of Drugs, Possession of Cocaine, and Weapon Under Disability, in Summit County Common Pleas Court Case Number 05-05-1934(A),  on or about February 22, 2010;

Barclay has two 2005 convictions under the same case number: one for trafficking in cocaine and one for illegal manufacture of drugs.

As conceded in Barclay's supplemental memo, either of the 2005 charges could be properly classified as an ACCA predicate offense.[27]  Barclay's indictment shows that he was charged with violations of Ohio Revised Code § 2925.03(A)(2) and § 2925.04(A), both first degree felonies.  At that time, a first degree felony was punishable by more than ten year's imprisonment.[28]  Moreover, the language of these two statutes tracks the ACCA's requirement that the controlled substance conviction involve "manufacturing, distributing, or possessing with intent to manufacture of distribute."[29]  Thus, the charges were eligible as ACCA predicate

---

[26] Doc. 50-2 at 11.  If Barclay had been sentenced for a third degree felony with a crime of violence specification, he would have faced a minimum term of greater than one year. Ohio Rev. Code §§ 2929.11(B)(3), 2929.11(B)(6).

[27] Doc. 50 at 8-9.

[28] Ohio Rev. Code § 2929.14(A)(4) (effective date June 13, 2002).

[29] 18 USC § 924(e)(2)(A)(ii).

Case No. 5:13-CR-3
Gwin, J.

offenses.  Because these counts were based on the same conduct, they are properly counted as

only one predicate ACCA offense.[30]

In his *pro se* filings, Barclay disputes that his 2005 controlled substance convictions

should be counted as a predicate offense.  Barclay argues that this Court improperly relied on the

pre-sentence report (PSR) in determining that the 2005 charges met the ACCA serious drug

charge required elements, even though the PSR did not attach the underlying indictment or plea

documents.[31]

Barclay's argument loses.  Even if the PSR was insufficient at the time, the aggravated

trafficking charge did in fact meet the ACCA's serious drug offense requirements.

When a defendant is charged under a multi-prong statute, and only some of the statute's

permutations qualify as serious drug offenses under the ACCA, a Court may need to determine

under which prong a defendant was charged.  In doing so, a Court can only look to "the statutory

definition, charging document, written plea agreement, [and the] transcript of [the] plea

colloquy."[32]  These are so-called *Shepard* documents.  The Sixth Circuit had held that a

defendant's PSR is an insufficient substitute for *Shepard* documents when a sentencing court

attempts to determine whether a prior conviction is a predicate offense under the ACCA.[33]

---

[30] Doc. 53 at 6 ("The government agrees that Barclay's 2005 convictions for aggravated trafficking in cocaine and illegal manufacturing of drugs constitute a single predicate offense for the purposes of the ACCA."); *see also United States v. Martin*, 526 F.3d 926, 939 (6th Cir. 2008) (noting that prior felony convictions are only considered distinct criminal episodes if they "occurred on occasions different form one another").

[31] Doc. 54-1 at 2.  Barclay raised these same arguments about the 1995 charge.  Because the Court concluded that the 1995 charges were improperly classified based on the term of conviction available, the Court did not address the issue with respect to the 1995 conviction.

[32] *Shepard v. United States*, 544 U.S. 13, 16 (2005); *see also Mathis v. United States*, ____ U.S. ____, ____ S. Ct. ____, 2016 WL 3434400 (June 23, 2016).

[33] *Sanders v. United States*, 404 F.3d 980 (6th Cir. 2005).

Case No. 5:13-CR-3
Gwin, J.

However, using a PSR alone only invalidates the classification of an ACCA predicate offense if the PSR was in fact wrong in light of the *Shepard* documents.[34]  In other words, relying on a  PSR alone, rather than *Shepard* documents, produces a "voidable" rather than a "void" offense.[35]  The defendant still must show that the underlying conviction did not qualify.

Defendant Barclay argues that his 2005 offenses should not be counted towards his sentence under the ACCA because the underlying documents were available but were not produced at the time of sentencing.  However, Barclay does not dispute that the PSR was accurate in describing the offenses and their punishment level.  Indeed, the relevant *Shepard* documents are now in the record and confirm that the PSR correctly classified the conviction. The Court did not err in sentencing Barclay using his 2005 convictions as a predicate ACCA offense.

### B. ACCA Predicate Offenses: Violent Felonies

Under the ACCA, a defendant may face the fifteen-year felon-in-possession mandatory minimum sentence based on prior convictions for a "violent felony" in addition to charges for a serious drug offense.[36]

---

[34] *United States v. Martinez-Cortez*, 988 F.2d 1408 (1993); *see also United States v. Thomas*, 13 Fed. App'x 233, 241 (6th Cir. 2001) (discussing *Martinez-Cortez* and holding no plain error in district court's reliance on the accuracy of the PSR to establish defendant's prior convictions under the ACCA where defendant failed to object to the PSR's "sufficiency or accurateness" and did not "produce[] any evidence which would call into question the existence or accuracy of the prior convictions as described in the . . . PSR"); *United States v. Birdsong*, 330 Fed. App'x 573, 586-7 (6th Cir. 2009) (same).  The Court recognizes that in at least one Sixth Circuit case, the Government was deemed to have waived its opportunity to submit *Shepard* documents when it had failed to do so at the sentencing stage.  *United States v. Lara*, 590 F. App'x 574, 586 (6th Cir. 2014).  However, *Lara* is distinguishable from the case at hand.  First, it was a direct appeal, rather than the collateral attack raised by Barclay's habeas proceeding. Second, the Defendant had objected to the ACCA classifications at the sentencing stage, yet the Government had failed to include any *Shepard* materials – a fact which the Sixth Circuit found "baffling." *Id*.  Here, no parties requested *Shepard* documents at the time of sentencing.  Third, the *Shepard* documents are now available and in the record in this case.  They were not in *Lara*.

[35] *Martinez-Cortez*, 988 F.2d at 1412.

[36] 18 U.S.C. § 924(e)(1).

Case No. 5:13-CR-3
Gwin, J.

> Until recently, the Armed Career Criminals Act defined "violent felony" as
>
> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.[37]

The first prong is called the use-of-force clause.  The first part of the second prong is called the enumerated-offenses clause.  And the second part of the second prong, emphasized above, is called the residual clause.

On June 26, 2015, the Supreme Court gave an opinion in *Johnson v. United States*, holding that the residual clause was unconstitutionally vague.[38]  The residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges."[39]  If a court imposed an increased sentence based on felonies that qualified under the residual clause alone, that sentence violated a criminal defendant's constitutional right to due process.[40]  Moreover, the Supreme Court's conclusion is retroactive.  A criminal defendant can collaterally challenge his sentence under the ACCA in a § 2255 habeas proceeding.[41]

In light of *Johnson*, this Court — and federal courts all over the country — are being asked to analyze whether previous residual clause predicate convictions are still predicate offenses under either the use-of-force clause or the enumerated offenses clause.

The Court addresses Barclay's predicate offenses in turn.  Barclay's 1998 conviction for aggravated assault remains a violent felony under the use-of-force clause.  Barclay's 1986

---

[37] 18 U.S.C. § 924(e)(2)(B) (emphasis added).
[38] ___ U.S. ___, 135 S. Ct. 2551 (2015).
[39] *Id.* at 2557.
[40] *Id.*
[41] *Welch v. United States*, ___ U.S. ___, 136 S. Ct. 1257 (2016).

Case No. 5:13-CR-3
Gwin, J.

conviction for aggravated burglary remains a violent felony under the enumerated-offenses clause.

### 4. Aggravated Assault, in Summit County Common Pleas Case Number 98-08-1967, on or about November 2, 1998;

The PSR identifies Barclay's 1998 aggravated assault conviction under Ohio Revised Code § 2902.12 as an ACCA predicate offense.

Barclay argues that this conviction is no longer a predicate offense in light of *Johnson*. Because assault is not related to one of the enumerated offenses, aggravated assault must now fall under the use-of-force prong. It does.

For a conviction to fall under the use-of-force prong, the underlying statute must necessarily entail "the use, attempted use, or threatened use of physical force against the person of another." So long as the statute only punishes conduct involving the use or attempted use of physical force, the statute does not need to expressly mirror the use-of-force clause.

Consider a statute that punishes a wide array of conduct, some of which would entail the use or threatened use of physical force, and some of which would not. This statute could not be a predicate felony under the ACCA's use-of-force clause. The scope of the prohibited conduct is too broad. "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than" a statute which had the exact language of the use-of-force clause.[42]

At the time of Barclay's conviction, Ohio Revised Code § 2902.12 defined aggravated assault as:

(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the

---

[42] *Descamps v. United States*,        U.S.        , 133 S. Ct. 2276, 2281 (2013).

Case No. 5:13-CR-3
Gwin, J.

> victim that is reasonably sufficient to incite the person into using deadly force,
> shall knowingly:
>
>> (1) Cause serious physical harm to another or to another's unborn;
>>
>> (2) Cause or attempt to cause physical harm to another or to
>> another's unborn by means of a deadly weapon or dangerous
>> ordnance, as defined in section 2923.11 of the Revised Code.[43]

In *United States v. Anderson*, the Sixth Circuit addressed this same statutory language.[44]

The Sixth Circuit unequivocally held that Ohio's aggravated assault statute fell under the use-of-

force clause because it "has as an element the use, attempted use, or threatened use of physical

force against the person of another."  The Sixth Circuit wrote,

> the Ohio aggravated assault statute, which requires proof of "serious physical
> harm" or "physical harm ... by means of a deadly weapon or dangerous
> ordnance," . . . . necessarily requires proof that the defendant used "force capable
> of causing physical pain or injury."  We hold that one can "knowingly ... [c]ause
> serious physical harm to another," . . . only by knowingly using force capable of
> causing physical pain or injury, *i.e.,* violent physical force, in the context of
> determining what crime constitutes a "violent felony" under § 924(e)(2)(B)(i).[45]

In other words, Ohio's aggravated assault statute is the same as, or narrower than, a statute that

included the ACCA's use-of-force clause.

Defendant Barclay attempts to distinguish *Anderson* by pointing out that, pre-*Johnson*,

the Sixth Circuit had also found that Ohio's aggravated assault statute was a predicate offense

under the residual clause.[46]  Barclay's reasoning is flawed.  No where did the Sixth Circuit

conclude that aggravated assault was an ACCA predicate offense *exclusively* under the residual

clause.  It was entirely possible that, pre-*Johnson*, a conviction could be analyzed under both the

residual and the use-of-force prong.  The Sixth Circuit's statements regarding the residual clause

---

[43] This definition was in effect at the time of Barclay's conviction.
[44] 695 F.3d 390 (6th Cir. 2012).
[45] *Id.* at 400.
[46] *United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013); *United States v. Calloway*, 189 F.
App'x 486 (6th Cir. 2006).

Case No. 5:13-CR-3
Gwin, J.

do not undermine the straightforward conclusion of *Anderson*: Ohio's aggravated assault statute remains a predicate offense because it has as an element the use, attempted use, or threatened use of physical force against the person of another.

      5. Aggravated Burglary, in Summit County Common Pleas Case Number 86-05-0560(A), on or about August 1, 1986.

The PSR also identifies Barclay's 1986 conviction for aggravated burglary under Ohio Revised Code § 2911.11(A)(3) as an ACCA predicate offense.  It is a question of first impression whether aggravated burglary under this statute qualifies as an ACCA predicate offense after the ACCA residual clause was found to be unconstitutionally vague.

The Government agrees that aggravated burglary does not necessarily involve the use of physical force.  Instead, Ohio's aggravated burglary statute must fall under the enumerated offense prong to remain a predicate offense.

This might appear to be a simple proposition at first glance.  A prior conviction qualifies as an ACCA predicate offense under the enumerated clause if it is "burglary, arson or extortion, [or] involves use of explosives."[47]  As a burglary statute, shouldn't aggravated burglary fit?  Not necessarily. The question is more complicated.

The Supreme Court has instructed that a statute's name should not control whether a conviction is a predicate offense under the enumerated clause.  Instead, this Court "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime — i.e., the offense as commonly understood."[48]  "The prior conviction

---

[47] 18 U.S.C. § 924(e)(2)(B)(i).
[48] *Descamps*, 133 S.Ct. at 2281.  On June 23, 2016, the Supreme Court issued a decision in *Mathis v. United States*. ___ U.S. ___, ___ S.Ct. ___, 2016 WL 3434400 (June 23, 2016). *Mathis* further underscored *Descamps*' holding.  The relevant inquiry is the categorical scope of the statute under which Petitioner Barclay was sentenced, not the particular facts of his conviction.  Ohio's aggravated burglary

Case No. 5:13-CR-3
Gwin, J.

qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense."[49]  In other words, if Ohio's aggravated burglary statute punishes conduct beyond what is covered by generic burglary, then it cannot be a predicate enumerated offense.

At the time of Barclay's conviction, Ohio punished alternatives for aggravated burglary. Barclay was convicted under the provision of Ohio's aggravated burglary statute that punishes entry into places used for habitation.  The Court therefore considers whether the Supreme Court's generic burglary encompasses burglary of inhabited places.

The leading case on the definition of generic burglary is *Taylor v. United States*.[50]  In *Taylor*, the Supreme Court considered what types of state burglary offenses were predicates under the ACCA's enumerated offenses clause.  The Court began with a review of traditional common-law burglary, noting that at its core, burglary punished breaking and entering of "a dwelling" with intent to commit a felony inside.[51]  In *Taylor*, the defendant-petitioner argued that ACCA burglary should be limited to such "narrow[]" and aggravated circumstances as entering an "occupied" building.[52]  However, the Court rejected these arguments, and determined that Congress intended a "broader" generic definition of burglary in the ACCA's enumerated offenses clause that included both "ordinary burglaries" as well as such "especially dangerous" burglaries.[53]

---

statute in effect at the time had three subsections.  The three subsections are divisible.  Barclay's sentencing documents state that he was convicted under the third subsection.  His sentence was for the crime of "Aggravated burglary, Ohio Revised Code Section 2911.11(A)(3), an aggravated felony of the first degree." Doc. 53-1.  As the Supreme Court has instructed, this Court thus discusses the categorical nature of Section (A)(3) burglary, not the underlying facts of Barclays' conviction.  The parties do not dispute this approach.

[49] *Id.*
[50] 495 U.S. 575, 599 (1990).
[51] *Id.* at 592.
[52] *Id.* at 596.
[53] *Id.* at 597

-14-

Case No. 5:13-CR-3
Gwin, J.

Ultimately, the Court concluded that the generic crime of burglary has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."[54]

Despite the Court's initial focus on whether the location burglarized was occupied or inhabited, post-*Taylor* jurisprudence has largely focused on whether a statute punishes burglaries of places that are not "buildings or other structures."  Federal Courts have parsed *Taylor* and its progeny to conclude that if a place such as a tent or vehicle is punished under a burglary statute, the statute cannot be a predicate offense under the ACCA.[55]  But even the Supreme Court's most recent discussion of its generic burglary definition has not addressed whether a burglary definition which punishes entry into *occupied* locations fits within generic burglary — regardless of whether the location is a building or a vehicle.  The most natural reading of *Taylor* is that it does.

The Supreme Court's generic definition of burglary was intended to be broader than traditional definitions that punished entering a dwelling or a place that was occupied.  The Supreme Court intended for the ACCA to punish the "'generic' crime — i.e. the offense as commonly understood."[56]  It would be nonsensical to conclude that the most traditional and well-understood form of burglary — entry into an occupied location with the intent to commit a crime inside — was now excluded merely because the occupied location was not a building.  Indeed, in *Taylor*, the Supreme Court repeatedly pointed out Congress's intent to punish repeat burglary offenders because of burglary's "inherent potential for harm to persons," when a dwelling was

---

[54] *Id.* at 599.
[55] *See, e.g.*, *Mathis,___ U.S.___,___ S.Ct.___, 2016 WL 3434400 (June 23, 2016)*.
[56] *Descamps*, 133 S.Ct. at 2281.

Case No. 5:13-CR-3
Gwin, J.

invaded.[57]  The Court's use of "building or other structure" does not exclude burglary of a

dwelling or occupied location from the generic definition.[58]

Barclay was convicted under the Ohio aggravated burglary subsection that punishes

"trespass in an occupied structure, as defined in section 2909.01 of the Revised Code . . . with

purpose to commit therein any theft offense, when . . . the occupied structure involved is the

permanent or temporary habitation of any person, in which at the time any person is present or

likely to be present."[59]

The Ohio Revised Code defines "occupied structure" as follows:

[A]n 'occupied structure' is any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

 (A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;

 (B) Which at the time is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;

 (C) Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present;

 (D) In which at the time any person is present or likely to be present.[60]

Barclay argues that because "occupied structure" includes places such as tents or

vehicles, Ohio's aggravated burglary charge is broader than generic burglary.  The Sixth Circuit

---

[57] *Taylor*, 495 U.S. at 588; *see also id.* at 586-88, 597.

[58] On June 23, 2016, the Supreme Court issued a decision in *Mathis v. United States*. ___ U.S. ___, ___ S.Ct. ___, 2016 WL 3434400 (June 23, 2016).  *Mathis* confirmed
  Also worth noting is an overlap in language.  The United States Sentencing Guidelines include career offender enhancements based on the predicate offense of "burglary of a dwelling."  U.S.S.G. § 4B1.2.  Only the Armed Career Criminals Act is before this Court at this time.  Use of the term dwelling here is not intended to implicate the Guidelines' enumerated offense clause.

[59] Doc. 53 at 13 (citing Ohio Rev. Code § 2911.11(A) (1983)).

[60] *Id.* (citing Ohio Rev. Code § 2909.01 (1983)).

Case No. 5:13-CR-3
Gwin, J.

has found that Barclay's argument holds water where the "occupied structure" definition is used in Ohio's *general* burglary statute.[61]

But Ohio's *aggravated* burglary conviction requires that the occupied structure is the "permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."[62] The Government argues that with the addition of these habitation elements, aggravated burglary falls within the generic definition of burglary. This Court agrees. The Supreme Court's efforts to provide a broader generic definition — even if couched in the language of "buildings and other structures" — still include these core burglaries of occupied locations.

In a similar case, a defendant has submitted briefing to this Court that the Supreme Court's recent decision in *Mathis* should alters the analysis of Ohio's aggravated burglary statute. The briefing argues that because "habitation" is not defined in Ohio's penal code, using the term in the aggravated burglary definition "does not narrow the overly broad definition of occupied structure."[63] For example, the briefing continues, "a person may use a watercraft or a tent as a temporary habitation — satisfying the element of Ohio Rev. Code § 2911.11(A)(3) . . . . However, under those circumstances, the conviction could not qualify as a generic burglary because the place being burgled is not a building or a structure."[64]

---

[61] *United States v. Coleman*, 655 F.3d 480, 482 (2011) ("Under Ohio law, an 'occupied structure' includes any 'house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter.' O.R.C. § 2909.01(C). Thus, Ohio's third-degree burglary statute sweeps more broadly than generic burglary because it 'includ[es] places, such as automobiles and vending machines, other than buildings.'")

[62] Ohio Rev. Code § 2911.11(A) (1983).

[63] *United States v. Miller*, 1:07-cr-451, Doc. 94. Petitioner Miller's Notice of Supplemental Authority.

[64] *Id.*

-17-

Case No. 5:13-CR-3
Gwin, J.

This argument misses the point. Based on *Taylor*'s description of traditional burglary, the location's use as a temporary or permanent habitation where a person is likely to be present brings a burglary into the generic definition, regardless of the structure being burglarized.

It is correct that the aggravated burglary statute's habitation language tracks the language found in subsection (B) and (D) of the "occupied structure" definition. As a result, some might argue that the Sixth Circuit has already concluded that habitation or the presence of the person does not make "occupied structure" narrower than generic burglary.

But Subsection (A)(3) aggravated burglary requires that the location be the "permanent or temporary habitation of any person" *and* that "at the time any person is present or likely to be present."[65] The Ohio Supreme Court has held that this conjunctive requirement is a separate element from the disjunctive descriptions in subsection (B) and (D) of the occupied structure definition.[66] In other words, because the location must be a habitation *and* a person must be likely to be present, there is a distinct element that separates aggravated burglary from non-aggravated burglary. As a result, the Sixth Circuit's holding that "occupied structure" makes non-aggravated burglary broader than generic burglary does not dictate the holding in this case.

Burglary of any location that is "the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present" fits within the Supreme Court's definition of generic. Barclays' 1986 conviction for aggravated burglary is properly classified as a predicate offense under the ACCA.

With Barclay's 2005 trafficking conviction, and his 1998 aggravated assault, Barclay has three predicate felonies. His sentence was proper under the Armed Career Criminals Act.

---

[65] Ohio Rev. Code § 2911.11(A) (1983).
[66] *State v. Wilson*, 388 N.E.2d 745, 749-50 (Ohio 1979).

-18-

Case No. 5:13-CR-3
Gwin, J.

### B.  Ineffective Assistance of Counsel

In addition to his ACCA claims, Barclay alleges that his constitutional right to effective assistance of counsel was violated.

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-pronged *Strickland v. Washington* test.[67]

First, the petitioner must show that his counsel's performance was deficient, meaning it "fell below an objective standard of reasonableness."[68] The Court determines "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[69] The Court's review is deferential, as "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[70]

Second, the petitioner must show that the deficiency prejudiced his defense; in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[71]

Barclay raises the following particular arguments: (1) Counsel rendered ineffective assistance when he failed to advise the Court that the prior convictions as presented in the PSI report could not be relied upon by the Court since the government failed to present approved documentation in light of *Shepard v. United States*, 544 U.S. 13 (2005); (2) Defense counsel rendered prejudicially ineffective assistance by not objecting to an ACCA designation based on a non-qualifying drug prior; (3) Counsel rendered ineffective assistance when he failed to object to

---

[67] [466 U.S. 668 (1984)](#).
[68] *Id.* at 688.
[69] *Id.* at 690.
[70] *Id.* at 690-91.
[71] *Id.* at 695.

Case No. 5:13-CR-3
Gwin, J.

the improper use of Paragraph 42 (Aggravated Burglary, Case No. 1998-05-0560(A)) as a predicate offense for completing the enhancement under the Armed Career Criminal Act; and (4) The cumulative impact of trial counsel's errors addressed herein require resentencing and/or an evidentiary hearing.[72]

All four of Barclay's arguments fail because he cannot show prejudice — the second prong of the *Strickland* test.  Even if counsel had objected to the use of Defendant's 2003 and 1995 drug offense — which the Court agrees were non-qualifying — Barclay still would have had sufficient predicate offenses to be sentenced under the ACCA.  Barclay cannot show that the outcome of his case would have been different.

Even if counsel had objected to use of the PSR absent the relevant *Shepard* documents, there is no "reasonable probability" of a different outcome.  An objection would have allowed time for the parties to submit the proper documents.  These *Shepard* documents are now in the record, and show that there are three sufficient predicate offenses for an ACCA sentence.

Even if counsel had objected to the use of the aggravated assault or the aggravated burglary as a predicate offense, there is no "reasonable probability" of a different outcome.  Both convictions were properly classified as predicates.

Finally, because each of these three claims do not raise to the level of ineffective assistance of counsel, there is no "cumulative impact" that requires the Court's redress.

Barclay's claims for ineffective assistance of counsel fail.

---

[72] Doc. 50 at 3-4.

Case No. 5:13-CR-3
Gwin, J.

### IV. Conclusion

For the reasons stated in this opinion, this Court **DENIES** Barclay's petition.  This Court certifies that Barclay could, in good faith, take an appeal on the question of whether aggravated burglary is a predicate offense under the ACCA.

IT IS SO ORDERED.

Dated:  July 11, 2016                                   *s/          James S. Gwin*
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE